# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **TOMAS LEMUS AMAYA** <br><br> Plaintiff, <br><br> v. <br><br> **LOGO ENTERPRISES, LLC, et al.** <br><br> Defendants. | Case No. 1:16-cv-00009 (CRC) |

### MEMORANDUM OPINION

Plaintiff Tomas Lemus Amaya worked for six years as a kitchen hand at the Pollo Granjero restaurant in Washington, D.C. In this suit, he seeks to recover from the restaurant and its owner unpaid minimum and overtime wages for a period of approximately two years. Despite having been served, defendants Logo Enterprises, LLC ("Logo Enterprises") and its owner Juan Loyola have not responded to the complaint or the clerk's entry of default. Amaya now petitions the Court to enter a default judgment, seeking a monetary judgment against Defendants in the amount of $300,163.82, which includes unpaid minimum and overtime wages, liquidated damages, attorney fees, expenses, and court costs. Because Amaya has adequately demonstrated Defendants' liability and that he is entitled to monetary relief, the Court will enter default judgments against Logo Enterprises and Loyola.

**I.    Background**

The Fair Labor Standards Act ("FLSA") requires employers to pay a federal minimum wage of $7.25 per hour, and overtime payments at a rate of one-and one-half times the employee's regular hourly wage for hours worked in excess of 40 hours per week. See 29

U.S.C. §§ 206–207. The statute further requires employers to pay state-established minimum wages if they are higher than the federal minimum wage. See id. § 218.

The District of Columbia Wage Payment and Collection Law ("DCWPCL") establishes the minimum wage that employers must pay to persons employed in the District of Columbia. See D.C. Code § 32–1001. During the time periods alleged in Amaya's complaint, the D.C. minimum wage was $8.25 per hour from January 1, 2013 until June 30, 2014; $9.50 from July 1, 2014 until June 30, 2015; and $10.50 from July 1, 2015 until the end of Amaya's employment on October 21, 2015. See D.C. Code § 32–1003. Because the federal minimum wage was lower during all relevant periods, Amaya's minimum hourly wage is established by the DCWPCL.

Logo Enterprises and Loyola are employers as defined by the FLSA and the DCWPCL.[1] Logo Enterprises is a limited liability company operating under the name Pollo Granjero. Compl. ¶ 6. Pollo Granjero employed Amaya as a kitchen hand, starting in 2009 until approximately October 21, 2015. Compl. ¶¶ 9–11.[2] Amaya filed suit on January 5, 2016 alleging that Defendants violated both the FLSA and DCWPCL by paying him less than the required minimum wage and no overtime pay despite his working an average of 83 hours per week. Id. ¶¶ 6–7, 17, 40–41. Accordingly, Amaya argues that he is entitled to $313,128.00,

---

[1] Logo Enterprise is an employer under the FLSA because it had two or more employees who handled goods that travelled in or were produced for interstate commerce, see Pl.'s Compl. ¶ 23, and the annual gross volume of Logo Enterprises' business exceeded $500,000, see id. at ¶ 22. See 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Logo Enterprises is likewise an employer under the DCWPCL because it is a corporation that "act[s] directly or indirectly in the interest of an employer in relation to an employee." D.C. Code § 32–1002(3). Additionally, because Logo Enterprises is an employer under the FLSA and "the DCWPCL is construed consistently with the FLSA," it is considered an employer under the DCWPCL as well. Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 1, 6 (D.D.C. 2010).

[2] The record does not specify when Amaya began his employment.

2

which includes unpaid wages from January 1, 2013 until October 21, 2015, liquidated damages, court costs, and attorney fees and expenses.

Loyola and the Company were properly served on January 12, 2016 and February 4, 2016 respectively. Neither Defendant filed a response, and the Clerk of the Court entered a default against both. In September 2016, Amaya filed a Motion for Default Judgment, which has received no response in the past six months.

## II.     Standard of Review

The standard for default judgment is a two-step procedure. See e.g., Ventura v L.A. Howard Constr. Co., 134 F. Supp. 3d 99, 102 (D.D.C. 2015). A plaintiff must request first that the Clerk of the Court enter a default against an opposing party who has "failed to plead or otherwise defend," Fed. R. Civ. P. 55(a), which "establishes the defaulting party's liability for the well-pleaded allegations of the complaint." Boland v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 67 (D.D.C. 2011). A plaintiff must then petition the court for a default judgment against the parties. Fed. R. Civ. P. 55(b)(2). The purpose of default judgments is to prevent absentee defendants from escaping liability by refusing to participate in judicial proceedings. See Elite Terrazzo Flooring, 763 F. Supp. 2d at 67.

Once liability has been established, courts have considerable latitude in determining the appropriate award through an independent evaluation of the alleged damages. Courts may choose to hold a hearing or can base their assessments on "detailed affidavits or documentary evidence" submitted by plaintiffs in support of their claims. Boland v. Providence Constr. Corp., 304 F.R.D. 31, 36 (D.D.C. 2014) (quoting Fanning v. Permanent Sol. Indus, Inc., 257 F.R.D. 4, 7 (D.D.C. 2009)). However, the Court is not required to hold a hearing "'as long as it ensures that

there is a basis for the damages specified in the default judgment.'" Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d at 67.

**III.   Analysis**

The Court will first consider Defendants' liability and then turn to evaluating the relevant damages.

   A.   <u>Liability</u>

The FLSA requires that an employer pay his employees for hours worked in excess of forty hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The DCWPCL likewise requires employer to compensate employees for overtime "at a rate not less than 1 1/2 times the regular rate at which the employee is employed." D.C. Code § 32–1003. Under the DCWPCL, if an employer fires an employee, "the employer shall pay the employee's wages earned not later than the working day following such discharge." D.C. Code § 32–1303. If an employee quits or resigns, however, "the employer must pay the employee's wages due upon the next regular payday or within 7 days from the date of quitting or resigning, whichever is earlier." Id.[3]

Amaya has submitted an affidavit, summarizing the hours he worked and attesting that the Company failed to pay him a legally-mandated minimum wage or overtime for work done

---

[3] Amaya cites to D.C. Code § 32–1303(2) for the proposition that employers must pay an employee who quits or resigns all wages due upon the next regular pay day, but he does not reference D.C. Code § 32–1303(1), which sets forth a separate timeline for employees who are fired. Regardless of whether Amaya resigned or was fired though, any deadline to pay earned wages has passed.

4

between January 2013 and October 21, 2015, resulting in approximately $82,198.50 in unpaid wages. See Pl's Mot. Default J. ("MDJ"), Amaya Aff. ¶¶ 10, 19.

For Juan Loyola to be liable in an individual capacity, he must qualify as an employer under the FLSA and the DCWPCL. See Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 1, 5 & n. 2 (D.D.C. 2010) (applying individual liability analysis under the FLSA to individual liability analysis under the DCWPCL). Typically, an individual "who exercises operational control over an employee's wages, hours, and terms of employment qualifies as an 'employer,' and is subject to individual liability." Guevara v. Ischia, Inc., 47 F. Supp. 3d 23, 26–27 (D.D.C. 2014) (internal citation omitted); see also Perez v. C.R. Calderon Construction, Inc., 2016 WL 7410544, at *20 (D.D.C. Dec. 22, 2016) ("[T]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.") (quoting Ruffin v. New Destination, 800 F. Supp. 2d 262, 269 (D.D.C. 2011). To determine individual liability, courts in this district have considered whether the employer was responsible for hiring and firing, controlling work schedules, establishing pay rates, and maintaining employment records. See Ventura, 738 F. Supp. 2d at 6. Here, Amaya alleges that Loyola was the owner of Logo Enterprises and "exercise[d] *exclusive* control over its operations and pay practices." Compl. ¶ 7 (emphasis added). For example, Loyola was physically present at the restaurant every day, and he was responsible for hiring Amaya, assigning him tasks, supervising his work, setting his work schedule, and paying him. See Amaya Aff. ¶¶ 4—12. Such facts sufficiently establish that Loyola is an employer under the FLSA because he had "a significant ownership interest in [Logo Enterprises]" and "operational control" over it. Ventura, 738 F. Supp. 2d at 6; see also Martinez v. Asian 328, LLC, 2016 WL 4621068, at *4 (D.D.C. Sep. 6, 2016). With no response from

Defendants, the Court accepts Amaya's well-pleaded allegations as true and holds that Logo Enterprise and Juan Loyola are liable to Amaya. See, e.g., Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d at 67–68; Fanning, 256 F.R.D. at 7.

B.  Damages

"When a defendant has failed to respond, the Court must make an independent determination—by relying on affidavits, documentation, or an evidentiary hearing—of the sum to be awarded as damages." Ventura, 134 F. Supp. 3d at 104. In his affidavit, Amaya avows that he typically worked 83 hours per week, for which he was paid $800 twice per month (the equivalent of $369.20 per week or $4.56 per hour) from January 1, 2013 through August 31, 2015, and $900.00 twice per month ($415.35 per week or $5.00 per hour) from September 1, 2015 through October 21, 2015.[4] Amaya Aff. ¶¶ 10–11, 15; see also U.S. Dep't. of Labor Wage and Hour Div. Coefficient Table. Under the DCWPCL, he is owed $82,198.89 in unpaid wages for his 83-hour work weeks. The Court independently confirmed Amaya's calculations and accepts the accuracy of the $82,198.89 figure. See infra App. 1.

In addition to unpaid wages, Amaya seeks liquidated damages. Under the FLSA, liquidated damages equal the amount of unpaid wages. See 29 U.S.C. § 216. Under the current version of the DCWPCL, which came into effect on December 23, 2014, liquidated damages are "an amount equal to treble the unpaid wages." Fiscal Year 2014 Budget Support Emergency Act of 2013, D.C. Code § 32–1303; see, e.g., Martinez v. Asian, 2016 WL 7167969, at *5 (D.D.C.

---

[4] Amaya's original complaint states that from September 1, 2015 through October 21, 2015, his effective hourly rate was $5.13. In Amaya's motion for default judgment, the effective rate for that time period is calculated at $5.00 per hour. Because Amaya has established how he calculated the latter figure, the Court will use the $5.00 hourly rate for its own calculation of damages.

Dec. 8, 2016).[5] The prior DCWPCL, like the FLSA, defined liquidated damages as the amount of unpaid wages.

Amaya argues that the DCWPCL came into effect on October 1, 2013, so his liquidated damages equal his unpaid wages from January 1, 2013 to September 30, 2013, and treble any unpaid wages after that. He calculates his liquidated damages at $208,148.13. But the "treble damages provision" did not become effective until December 24, 2013. See Ventura, 134 F. Supp. 3d at 105 n.3. The source of Amaya's confusion, however, could be due to the fact that the District enacted an emergency act—the Fiscal Year 2014 Budget Support Emergency Act of 2013 ("A20–130")—which authorized treble damage awards between October 1, 2013 and October 28, 2013. See Fiscal Year 2014 Budget Support Emergency Act of 2013, §§ 11001, 11003. The relevant time periods and applicable provisions are therefore as follows: From January 1, 2013 to September 30, 2013, liquidated damages equal unpaid wages under both the FLSA and the DCWPCL; from October 1, 2013 until October 28, 2013, liquidated damages equal treble the unpaid wages under the A20–130; from October 29, 2013 until December 23, 2014, liquidated damages equal unpaid wages under both the FLSA and DCWPCL; and finally, from December 24, 2014 to October 21, 2015, liquidated damages equal treble the unpaid wages

---

[5] More precisely, under the DCWPCL, liquidated damages equal either "10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to treble the unpaid wages, whichever is smaller." D.C. Code § 32–1303. Using the former calculation, if Amaya were owed roughly $82,000 in unpaid wages for over a year, he would be owed at a minimum $2,900,000 in liquidated damages ($82,000 x 10% x 365 days). Because the second calculation would result in a smaller damages award, the Court will treble Amaya's unpaid wages to determine his liquidated damages. See Ventura, 738 F. Supp. 2d at 22.

under the DCWPCL. With the damages provisions properly applied to the relevant time periods, Amaya's liquidated damages total $200,261.25. See infra App. 2.

        C.        <u>Attorney's Fees, Court Costs, and Expenses</u>

Both the FLSA and the DCWPCL authorize reasonable attorney's fees and costs to employees whose rights are violated. See 29 U.S.C. § 216(b); D.C. Code § 32–1012(c). "Under FLSA, an award of attorney's fees to the prevailing party is mandatory." <u>Escamilla v. Nuyen</u>, 2017 WL 23739, at *14 (D.D.C. Jan. 3, 2017) (citing <u>Driscoll v. George Washington Univ.</u>, 55 F. Supp. 3d 106, 112 (D.D.C. 2014)). Because the Court finds Amaya is entitled to relief under the FLSA and the DCWPCL, he is likewise entitled to reasonable attorney's fees.

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." <u>Ventura</u>, 134 F. Supp. 3d at 105 (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984)). "An attorney's usual billing rate is presumptively the reasonable rate, provided that the rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Id.</u> (citing <u>Kattan by Thomas v. District of Columbia</u>, 995 F.2d 274, 278 (D.C. Cir. 1993) (internal quotation marks omitted)). "[A] moving party must affirmatively 'demonstrate that [his] suggested rates [are] appropriate' by establishing their conformity with rates charged in the community for similar services." <u>Id.</u> (quoting <u>Eley v. District of Columbia</u>, 793 F.3d 97, 104–05 (D.C. Cir. 2015)).

Amaya seeks $9,816.80 in attorney's fees for the 22.2 hours worked by attorneys Jonathan Tucker and Justin Zelikovits and the 4.4 hours worked by their paralegal Tre Holloway. Zelikovitz has provided an affidavit detailing the hours worked, the description of the activity, and the total costs. See MDJ, Ex. C, at 1. The Court is satisfied that Amaya has adequately

8

justified the hours expended on his case. In addition, in support of their $406.00 hourly rate, Amaya's attorneys have submitted the Legal Service Index Laffey Matrix as evidence of the prevailing rates for similar services in the community. Id. at 2–4. "The Laffey Matrix sets out a general guideline for awarding attorneys' fees based on experience." Salazar ex rel. Salazar v. D.C., 809 F.3d 58, 62 (D.C. Cir. 2015) (citing Eley, 793 F.3d at 101–02). There are two predominant versions of the Laffey Matrix: "(i) the Laffey Matrix as updated by the Legal Services Index ("LSI") of the Nationwide Consumer Price Index ("CPI") (the "LSI Laffey Matrix"), and (ii) the All–Items CPI for the Washington, D.C. area (also known as the "USAO *Laffey* Matrix")." Id. Without additional evidence to justify applying the LSI Matrix's higher rates for complex federal litigation, the Court will apply the standard USAO Laffey Matrix to calculate Amaya's legal fees. See USAO Laffey Matrix—2015-2017 ("USAO Laffey Matrix"), available at https://www.justice.gov/usao-dc/file/889176/download. Both Tucker and Zelikovits have at least six years of legal experience, see MDJ 9, and therefore, their Laffey Matrix rate is $332.00 per hour for work performed in 2015 and $339.00 for work performed in 2016, see USAO Laffey Matrix. Paralegal Holloway's Laffey Matrix rate is $157.00 per hour (all of her work occurred in 2016). Based on these rates, Amaya's attorneys' fees total $8,181.60.

Accordingly, the Court will award Amaya a total of $291,121.74; including $82,198.89 in unpaid wages, $200,261.25 in liquidated damages, $8,181.60 in attorneys' fees, $400.00 in court filing fees, and $80.00 in service expenses.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant Amaya's Motion for Entry of Default Judgment. The Court will issue a separate Order consistent with this Memorandum Opinion.

                                                     CHRISTOPHER R. COOPER
                                                     United States District Judge

Date: May 4, 2017

Appendix 1

| Date Range | D.C. Minimum Wage D.C. Overtime Wage | Amount Owed Per Week[6] | Number of Weeks | Wages Owed |
|---|---|---|---|---|
| 1/1/13 – 10/30/13 ($369.20 per week) | $8.25 $12.375 | $492.93 | 39 | $19, 224.27 |
| 10/1/13 – 10/28/13 ($369.20 per week) | $8.25 $12.375 | $492.93 | 4 | $1,971.72 |
| 10/29/13 – 12/23/13 ($369.20 per week ) | $8.25 $12.375 | $492.93 | 8 | $3,943.44 |
| 12/24/13 – 6/30/14 ($369.20 per week) | $8.25 $12.375 | $492.93 | 27 | $13,309.11 |
| 7/1/14 – 6/30/15 ($369.20 per week) | $9.50 $14.25 | $623.55 | 52 | $32, 424.60 |
| 7/1/15 – 8/31/15 ($369.20 per week) | $10.50 $15.75 | $728.05 | 9 | $6,552.45 |
| 9/1/15 – 10/21/15 ($415. 35 per week) | $10.50 $15.75 | $681.90 | 7 | $4, 773.30 |
| **Total** | | | | $82,198.89 |

---

[6] Wages owed = (40 hours x applicable minimum wage) + (overtime hours [43 hours] x one and one- half times the minimum wage) - wages paid.

Appendix 2

| Date | Unpaid Wages | Liquidated Damages | Total |
| --- | --- | --- | --- |
| 1/1/13 – 9/30/13 | $19,224.27 | $19,224.27 | $38,448.54 |
| 10/1/13 – 10/28/13 | $1,971.72 | $5,915.16 | $7,886.88 |
| 10/28/13 – 12/23/13 | $3,943.44 | $3,943.44 | $7,666.88 |
| 12/24/13 – 6/30/14 | $13,309.11 | $39,927.33 | $53,236.44 |
| 7/1/14 – 6/30/15 | $32, 424.60 | $97,273.80 | $129,698.40 |
| 7/1/15 – 8/31/15 | $6,552.45 | $19,657.35 | $26,209.80 |
| 9/1/15 – 10/21/15 | $4, 773.30 | $14,319.90 | $19,093.20 |
| **Total:** | $82,198.89 | $200, 261.25 | $282,460.14 |